UNITED STATES, Appellee,

v.

Private (E–1) Mashona A. WILLIAMS, III, SSN 495–62–4783, United States Army, Appellant.

SPCM 14357.

U. S. Army Court of Military Review.

30 June 1980.

Captain John P. Young, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, and Major Carlos A. Vallecillo, JAGC.

Captain John P. Galligan, JAGC, argued the cause for appellee. With him on the brief were Lieutenant Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, and Major Robert B. Williams, JAGC.

Before RECTOR, CARNE and O'DONNELL, Appellate Military Judges.

## OPINION OF THE COURT

O'DONNELL, Judge:

The appellant stands convicted of perjury and a one-week unauthorized absence in violation of Articles 131 and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 931 and 886. His sentence to bad-conduct discharge, confinement at hard labor for five months, and forfeiture of $279.00 pay per month for five months was approved by the convening authority.[1]

The appellant was acting as a confidential informant for the military criminal investigators in Augsburg, Federal Republic of Germany. In this capacity, he purchased heroin on three occasions from Specialist Five Gary Johnson, a fellow soldier. On 4 May 1979, he was scheduled to testify at an Article 32 investigation which was convened to investigate charges against a soldier named Silas. At that time, the appellant informed Captain John P. Ley, Judge Advocate General's Corps, the government representative at the investigation, that he

was reluctant to testify. Captain Ley discussed the matter with the appellant who agreed to testify and in fact did testify at the *Silas* investigation.

On 11 May 1979, the appellant was scheduled to testify at the *Johnson* Article 32 investigation. When Captain Ley, again the government representative, met with the appellant before the investigation convened, the appellant informed him that he would not testify. Captain Ley discussed the matter with the appellant for approximately 45 minutes, informing him that he would have to testify and testify truthfully. The appellant again indicated that he would not testify. The criminal investigator in charge of the case, Special Agent Savage, and another informant then talked to the appellant concerning his testimony. Afterwards, Captain Ley again talked to him and told him that it was up to him whether he would testify. At that time Captain Ley did not know if the appellant would testify.

Thereafter, the formal investigation was convened, and the appellant was called as a witness. After being sworn, he was questioned by the investigating officer concerning the incidents in question. The appellant did not refuse to testify. Rather, he answered most questions by stating that he could not remember. Captain Ley also questioned the appellant. This consisted essentially of referring to two pretrial statements the appellant had made to the criminal investigators wherein he related his activities as a government operative in connection with the purchase of heroin from Johnson. The appellant testified that he did not recall making these statements. Special Agent Savage testified how the appellant, acting as an undercover operative, had purchased heroin from Johnson. He identified the two statements that the appellant had made outlining the purchases.

The appellant's testimony at the Article 32 investigation that he could not remember certain material facts formed the basis

1. The convening authority disapproved guilty findings of incapacitation for duty because of previous indulgence in intoxicating liquor in

violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.

for the perjury charge of which he stands convicted. The appellant before us, for the first time, contends that he was prejudiced by being questioned at the Article 32 investigation after he had indicated his intent to refuse to testify. Neither Captain Ley nor the investigating officer advised the appellant of his rights under the Fifth Amendment or Article 31 of the Uniform Code of Military Justice, 10 U.S.C. § 831.[2]

The appellant's position is that he should have been warned of his rights under Article 31(b) by Captain Ley and Special Agent Savage when he informed them of his intent to refuse to testify. He contends also that he should have been so warned after he began to testify because it was apparent that he was lying. We disagree as to each contention.

■ As to the first point, the appellant was not an accused or a suspect when he talked to Captain Ley and Special Agent Savage before the investigation. Therefore, he did not come within the provisions of Article 31(b). True, he had stated his intent to refuse to testify, but this related to possible future activity and did not make him a suspect within the meaning of Article 31.

■ Included in the appellant's second contention is the question whether a witness before an Article 32 investigation has to be advised of his rights under Article 31. The Supreme Court has split on whether *Miranda*[3] or Fifth Amendment advice need be given to a witness before a grand jury. *See United States v. Mandujano*, 425 U.S.

564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977).[4] The Court is in agreement, however, that whether or not required in general, the failure to give the warnings to a grand jury witness will not protect him from a perjury prosecution for lying at the grand jury proceedings. *United States v. Mandujano; United States v. Wong*, both *supra*. The rationale for these cases is that while the Fifth Amendment "grants a privilege to remain silent without risking contempt, . . . it does not 'endow the person who testifies with a license to commit perjury.' *Glickstein v. United States*, 222 U.S. 139, 142, 32 S.Ct. 71, 56 L.Ed.2d 128 (1911)." [5]

These principles, while certainly relevant, are not necessarily dispositive as we must determine whether Article 31 compels a different result. The Court of Military Appeals has stated on many occasions that Article 31 is broader in application than the Fifth Amendment. For example, even though handwriting exemplars are outside the protection of the Fifth Amendment (*Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)), the Court of Military Appeals has held that they are within the broader reach of Article 31 (*United States v. White*, 17 U.S.C.M.A. 211, 38 C.M.R. 9 (1967)).

The Air Force Court of Military Review considered the question of advising a witness before an Article 32 investigation in *United States v. Pruitt*, 48 C.M.R. 495 (A.F. C.M.R.1974). In that case, the accused was

---

2. Article 31(b) provides:

No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. In *Mandujano*, a plurality of four justices concluded that *Miranda* warnings need not be given to a grand jury witness even though he is

known to be criminally involved in the matter under scrutiny.

5. The Supreme Court has reserved judgment on whether there is a requirement in any event to warn a witness before a grand jury of his Fifth Amendment privilege. *United States v. Mandujano*, 425 U.S. 564, 583, n.7, 96 S.Ct. 1768, 1779, n.7, 48 L.Ed.2d 212 (1976); *United States v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977). But see Justice Brennan's concurring opinion in *Mandujano*, 425 U.S. at 594–609, 96 S.Ct. at 1785–1792 and his dissenting opinion in *Washington* at 191–194, 97 S.Ct. at 1820–1822.

charged with having committed perjury during an Article 32 investigation. Although he was only a witness, he was suspected by the investigating officer of being involved in the criminal activities under investigation. The investigating officer did not warn him in accordance with Article 31. The Court held that Article 31(b) applies to witnesses at Article 32 investigations "under circumstances otherwise requiring that warnings be given." *Id.*, at 497. The Court concluded that as Pruitt was a suspect he should have been warned of his Article 31(b) rights before being questioned and reversed the conviction because it was based on his inadmissible testimony.

■ We agree that because of the scope of Article 31, a witness before an Article 32 investigation who is suspected of an offense must be advised by the investigating officer of his Article 31 rights even though there may be no constitutional requirement to do so. *See* paragraph 34, Manual for Courts-Martial, United States, 1969 (Revised edition).[6] The instant case, however, differs from *Pruitt* in that the appellant was not a suspect when he was called to testify at the Article 32 hearing. Accordingly, the investigating officer was under no obligation, at least at the outset, to advise him of any rights protected by Article 31.

However, the appellant's position is that he became a suspect after he began testifying contrary to his pretrial statements. In the civilian sphere, a witness could not claim that the constitution afforded him protection from a perjury prosecution under those circumstances. *United States v. Mandujano, supra.* But again, we are concerned not with the Constitution but with a statute.

The Court of Military Appeals addressed one aspect of this question in *United States v. Price*, 7 U.S.C.M.A. 590, 23 C.M.R. 54 (1957). In that case the accused was suspected of stealing certain government property. An investigating officer—not appointed under Article 32—took a statement from him in violation of Article 31(b). The accused was thereafter charged, *inter alia*, with making a false statement contrary to Article 107 of the Code. The Government, relying on a provision in the 1951 Manual for Courts-Martial (paragraph 140a, page 252), argued that Article 31 did not apply to a charge of making false official statements. The Court disagreed, stating:

There is no correlation between the provisions of Article 31 and making a false official statement. Insofar as we can determine there are no Article 107 exceptions to Article 31. If a person is a suspect or one accused, he must be warned in accordance with Article 31(b) before he can be questioned.[7]

■ Accordingly, if the appellant in this case had been a suspect before he testified at the investigation, an Article 31(b) warning would have been required. Absent such a warning, his statements at the investigation would have been inadmissible at his subsequent trial for perjury. *United States v. Price; United States v. Pruitt*, both *supra*.

■ Still to be resolved is whether a witness at an Article 32 hearing who is not a suspect must be warned when it appears sometime during his testimony that he has lied.[8] We think not. We do not believe

---

**6.** Article 31 warnings are not required for witnesses at trial. *See United States v. Howard*, 5 U.S.C.M.A. 186, 17 C.M.R. 186 (1954). *Cf., United States v. Milburn*, 8 M.J. 110 (CMA 1979).

**7.** The Manual for Courts-Martial, United States, 1969 (Revised edition), was changed to comport with *Price* at paragraph 140a (6).

A statement of the accused obtained from him in violation of Article 31 or any of the warning requirements in (2) above, or through the use of coercion, unlawful influ-

ence, or unlawful inducement is not admissible in evidence even if it is offered against him for some purpose other than to establish a confession or admission. See Article 31(d). For example, in a case in which a statement of the accused so obtained is charged as being false, it cannot be received in evidence to show that he made it.

**8.** Although it might be argued that the Article 32 investigating officer who was not a lawyer might not have concluded that the appellant was lying when he stated that he did not re-

that Article 31 requires the interruption of an examination in a formal hearing, whether it be a trial or an Article 32 investigation, to advise the witness that if he continues he subjects himself to perjury. Article 31(b) concerns itself with questioning a suspect or an accused relative to past acts or omissions, not future statements. *Price* does not compel a different result. In that case when the accused made his false statement, he was already a suspect. Moreover, the false statement in *Price* was not made in the context of an Article 32 hearing. The same is true with respect to paragraph 140a (6) of the Manual for Courts-Martial,[9] as that provision purported only to adopt *Price* and *Miranda*. *See* Department of the Army Pamphlet, 27–2, 28 July 1980, *Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition)*, page 27–11. *Miranda* warnings, as noted above, are not required in grand jury proceedings—and presumably in Article 32 hearings as well—at least when the witness is not a suspect.

member, we are satisfied that the government representative had so concluded sometime during his examination.

In conclusion, we hold that the appellant was denied no right protected by the self-incrimination clause of the Fifth Amendment or by Article 31 of the Code. Moreover, we are satisfied that the appellant's perjurious statements were not induced by any abuse of process or unfair prosecutorial procedures so as to amount to a deprivation of due process. *See United States v. Mandujano, supra*, 425 U.S. at 583, 585, 609, 96 S.Ct. at 1779, 1780, 1792. *Cf., Brown v. United States*, 245 F.2d 549 (8th Cir. 1957).

The findings of guilty and the sentence are AFFIRMED.

Chief Judge RECTOR and Senior Judge CARNE concur.

9. Note 7, *supra*.